DRAFT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
UNITED STATES OF AMERICA,                                         :
:
:
-v-                                                               :
:      20-cr-288 (LJL)
THOMAS BAKER; TONY McNAIR; and KITWANE                            :
PARKINSON                                                         :      MEMORANDUM &
:      ORDER
Defendants.                                                       :
:
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/10/2020

LEWIS J. LIMAN, United States District Judge:

## BACKGROUND

Defendants Thomas Baker, Tony McNair, and Kitwane Parkinson (together, "Defendants") have been indicted on four counts by a grand jury in the Southern District of New York. *See* Dkt. No. 1 ("Indictment"). All three defendants are charged in Count One with Hobbs Act robbery, 18 U.S.C. § 1951(b)(1). Baker and McNair are charged in Count Two with Hobbs Act robbery in violation of 18 U.S.C. 1951(b)(1), in Count Three with carjacking in violation of 18 U.S.C. §§ 2119 and 2, and in Count Four with brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i)-(iii). The charges arise from a robbery spree that occurred during the COVID-19 pandemic, sometime from March to April 2020. The Indictment alleges that Baker and McNair carried out an armed robbery and carjacking of a bread truck in the Bronx, New York, during which Baker allegedly shot the driver of the truck.

The Government now moves for a protective order to govern material disclosed to the defense pursuant to Federal Rule of Criminal Procedure 16, 18 U.S.C. § 3500, and the

Government's general obligation to produce exculpatory and impeachment material. Dkt. No. 33. The Government argues that there is good cause for a protective order because the crimes charged in the Indictment are violent, serious, and reflect coordination of criminal activity and access to firearms. *Id*. ¶ 7(a). It claims that the Government's "disclosure material may include material that (i) affects the privacy and confidentiality of individuals; (ii) would impede, if prematurely disclosed, the Government's ongoing investigation of uncharged individuals; (iii) would risk prejudicial pretrial publicity if publicly disseminated; and (iv) is not authorized to be disclosed to the public or disclosed beyond that which is necessary for the defense of this criminal case." *Id*. ¶ 2.

The Government and the defense have agreed upon certain portions of the proposed protective order. The parties agree that the defense shall not post any disclosure material on any Internet site or network site and shall not disclose such material to any unauthorized third party. *See* Dkt. No. 33 Ex. A ("Government's Proposed Order") ¶ 5; Dkt. No. 33 Ex. B ("Defendants' Proposed Order") ¶ 5. Authorized recipients of disclosure material include Defendants, prospective witnesses for purposes of defending this action, and personnel for whose conduct counsel is responsible, *i.e.*, personnel employed or retained by counsel, as needed for purposes of defending this action. Government's Proposed Order ¶ 5; Defendants' Proposed Order ¶ 6. The parties are also agreed on special provisions for the disclosure and protection of seized electronically stored information. Government's Proposed Order ¶¶ 9-13; Defendants' Proposed Order ¶¶ 9-13.

There is one important respect in which the Government and Defendants' versions of the proposed protective order differ. The Government has submitted a proposed protective order that would give it the right to designate certain disclosure material as "sensitive disclosure

material" based on its unilateral determination that the material "contains information that identifies, or could lead to the identification of, witnesses who may be subject to intimidation or obstruction, and whose lives, persons, and property, as well as the lives, persons and property of loved ones, will be subject to risk of harm" absent the provisions of the protective order. *See* Government's Proposed Order ¶ 2. Upon the Government's designation of material as "sensitive disclosure material" and subject only to contrary order of the Court, Defendants themselves are subject to severe restrictions on the possession or use of such material. Specifically, "a. [t]he Defendants may review sensitive disclosure material only in the presence of counsel or any other person authorized to receive sensitive disclosure material; b. [t]he Defendants may not copy or otherwise record sensitive disclosure material; and c. [t]he Defendants may not keep sensitive disclosure material or a copy of such material outside the presence of counsel, including in any prison facility." *Id.* ¶ 7(a)-(c). In short, Defendants themselves would not be able to review the material outside the presence of counsel and would not be able to retain the material to review at their leisure. In its motion, the Government states that it "anticipates that only a small subset of disclosure material would warrant th[e] Sensitive Disclosure Material designation." Dkt. No. 33 at 5 ¶ d. It would apply the designation only to "documents containing personally identifying information about victims and potential witnesses," such as victims' medical records and rap sheets of at least one third party." *Id*.

Defendants, who are detained at the Metropolitan Correctional Center ("MCC"), vehemently object to this provision and suggest an alternative. They agree that certain portions of the disclosure material are "sensitive" and should not be disclosed to any Defendant outside the presence of counsel or members of the defense team, for reasons including that disclosure could infringe on the privacy of the an individual, or unduly compromise an ongoing

3

investigation, or compromise a witness's safety. *See* Defendants' Proposed Order ¶ 2. So far, the parties are agreed. But, under Defendants' version of the protective order, the Government would list in the protective order the material designated as sensitive. Defendants' proposed protective order than goes on to state:

> The parties recognize that the Government may, upon further review of discovery, determine additional disclosure material is "sensitive". In the event, the Government determines there are additional "sensitive" disclosure material, it will label that material as "sensitive", and provide Defense counsel with both an unredacted copy of this material and a redacted copy of this material. Defense counsel will provide the Defendant only with the redacted copy of the labeled "sensitive" disclosure material. The Government agrees to confer with Defense counsel in an attempt to resolve any dispute regarding the labeling of any disclosure material as "sensitive. Any unresolved dispute as to whether material should be omitted or redacted from dissemination to the Defendants shall be promptly brought to the attention of the Court for its resolution. Until any such dispute is resolved, Defense counsel will refrain from sharing the disputed material with the defendants in unredacted form.

*Id*.

In essence, and as explained by the defense, Defendants' proposed form of protective order would require the Government to identify in advance the material it proposes to be designated "sensitive" and to redact the material that is sensitive where redaction is possible. The Government would provide defense counsel redacted and unredacted copies of proposed sensitive material, and the Government and defense would meet and confer in an attempt to agree on the need for and scope of redaction. If the parties agreed on the treatment of the material, that agreement would govern. Defendants would be permitted to retain and review, outside the presence of counsel, redacted versions of disclosures that the parties agree contain sensitive material and would review the unredacted versions in the presence of counsel. If the Government and defense did not agree on redactions, they would bring the issue to the Court. *See id*. Defendants' proposal would permit Defendants to view all of the unredacted records in

the presence of their attorneys, but would also allow each Defendant to view redacted versions of all disclosure materials on his own time.

## DISCUSSION

Federal Rule of Criminal Procedure 16(d)(1) provides: "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." The standards under which a court may find "good cause" were laid out by Judge Karas in *United States v. Smith*, 985 F. Supp.2d 506 (S.D.N.Y. 2013). "As the party seeking a protective order, the Government bears the burden of showing good cause." *Id.* at 522 (quotation omitted). "Good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" *Id.* at 522 (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp.2d 220, 222 (S.D.N.Y. 2006)).

The Government has established, and the defense does not dispute for purposes of this motion, that there is good cause for a protective order, including special protection for sensitive material, based on the risks that disclosure of certain material could improperly compromise the privacy and confidentiality of individuals and, if prematurely disclosed, could affect the Government's ongoing investigation of uncharged individuals. The Court is also persuaded that good cause exists to enter a protective order to ensure the safety of witnesses and alleged victims. However, the Government has not established good cause for its preferred method of treating sensitive disclosure material as described in the Government's Proposed Order ¶¶ 2 and 7. The Court agrees with Defendants that their proposed treatment of sensitive disclosure material is more appropriate under the present circumstances. Accordingly, the Court grants the Government's application for a protective order and directs the Government, after meeting and conferring with the defense, to file a revised order that incorporates Defendants' proposed

method of treating sensitive disclosure material and the further modification noted below, *see infra* pp. 11-12.

The Government presents a threefold response to Defendants' proposal for treating sensitive disclosure material. It contends that the Court should endorse its form of protective order because other Judges in this District have done so. *See* Dkt. No. 33 at 3-4 ¶ b (citing cases). It further contends, but without detail, that the redactions required by the Defendants' approach would be "an incredibly time-intensive exercise with any missed redactions resulting in a victim's private medical information being available in the jail." *See* Dkt. No. 36 at 2. Finally, the Government suggests that the Court should not be overly worried about the restraints on sensitive disclosure material because each Defendant will be able to see the evidence in the presence of his attorneys. The Court is not persuaded by these arguments, and addresses them in turn.

The fact that the Government may have convinced other District Judges, in other cases involving other facts, to sign protective orders similar or identical to its proposal does not mean this Judge in this case should adopt the Government's form. In every case, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Smith*, 985 F. Supp. 2d at 523 (quoting *United States v. Wecht*, 484 F. 3d 194, 211 (3d Cir. 2007)); *see also United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) (requiring a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"). It follows that the form of protective order appropriate for any case must be judged based on the particularized needs and risks of that case. There is no one-size-fits-all protective order.

There is no evidence that the defense objected to the Government's proposed procedure for handling sensitive material in those other cases.  In addition, the Government has not shown, or even argued, that those other cases were similar to this case, in which the categories of alleged sensitive material are relatively narrow, the number of affected documents relatively small, and the commensurate burden on the Government of sharing redactions of documents relatively low. *Compare In re Terrorist Attacks on Sept. 11*, 2001, 454 F. Supp. 2d at 222 ("In cases of unusual scope and complexity . . . broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause.") (citing *In re Agent Orange*, 821 F.2d 139, 148 (2d Cir. 1987)).  Nor has the Government pointed this Court to reasoning in those cases to support its request.  In any event, it is not the job of a District Judge to merely parrot the past decisions of her or his colleagues.  Rather, it is the genius of our federal judicial system that, absent controlling Circuit or Supreme Court precedent, and with due attention paid to parties' reasonable expectations based on settled practice and with respect for the decisions of other judges, it is still upon each District Judge to exercise her or his best judgment as to how the law should apply to the facts before her.  As Justice Stevens described, it is a strength—and not a weakness—of our federal judicial system that decisions are independently made by an array of judges based on of the specific facts presented to them.  *See McCray v. New York*, 461 U.S. 961, 962-63 (1983) (denying certiorari because "further consideration of the substantive and procedural ramifications of the problem by other courts will enable us to deal with the issue more wisely at a later date" by "serv[ing] as laboratories in which the issue receives further study") (Stevens, J., concurring)

Turning to the Government's second argument, its complaint that redaction will take time and that it may make mistakes are particularly ill-founded here.  Defendants are charged with

7

crimes that took place in person and over a limited duration of time. The parties agree that the quantity of discovery material is limited. The Government itself "anticipates that only a small subset of disclosure material would warrant th[e] Sensitive Disclosure Material designation." Dkt. No. 33 at 5 ¶ d. Indeed, the Government has so far identified only two sets of documents that will require redaction: victims' medical records and one third-party rap sheet. *Id.* Redacting documents may be one of the less pleasant aspects of modern law practice. But is also one of the more prevalent aspects. *See, e.g.*, *Breon v. Coca-Cola Bottling Co.*, 232 F.R.D. 49, 55 (D. Conn. 2005) (holding in context of privilege review that, "where a document purportedly contains some privileged information, the unprivileged portions of the document must be produced during discovery" and that the "proper procedure in such instances is to redact the allegedly privileged communication, and produce the redacted document"); *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018) (where the defendant had not "adequately demonstrated that, under the circumstances, reviewing and redacting the [email] strings at issue would be unduly burdensome," it was not permitted to "withhold the entirety of a conversation merely because one portion of such communication is subject to privilege"; rather, the defendant was under an obligation to "selectively redact the document in question and produce any non-privileged portions") (internal quotation marks and citation omitted). Criminal prosecutors must also make redactions from time to time. If civil lawyers are frequently required to make redactions as part of discovery, there is no reason to believe that the limited quantity of documents to be reviewed here would create an especially great burden for the Government lawyers. Nor, despite the Government's concerns that it might make a mistake and reveal information it should not, is there reason to believe that the professional and highly skilled Assistant United States Attorneys will do it less well than any other practitioner. If it turns out

that the quantity of affected material is far greater than anticipated and the burden on the Government would result in Defendants not receiving discovery on a timely basis or other unanticipated concerns, the Government can always apply for modification.

The Government's third argument would be troubling in ordinary times. In criminal cases, the accused has a personal interest in making his or her best defense. *See Faretta v. California*, 422 U.S. 806, 819 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."). "The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction." *United States v. Rosemond*, 958 F.3d 111, 120 (2d Cir. 2020) (quoting *Faretta*, 422 U.S. at 834). It frequently will be the defendant, and the defendant alone, who knows all of the relevant facts and who will appreciate the significance of a particular item of evidence and whether it is exculpatory or incriminatory. There is a value and an interest in the defendant being able to freely review the evidence against him, on his own time, and without a defense lawyer or anyone else looking over his shoulder.

Moreover, these are not ordinary times. In March 2020, shortly after COVID-19 was declared a pandemic, Judge Alison Nathan of this District noted the "obstacles the current public health crisis poses to the preparation of the Defendants' defense." *United States v. Stephens*, 2020 WL 1295155, at *3 (S.D.N.Y. Mar. 19, 2020). She observed then that "[t]h spread of COVID-19 throughout New York State—and the country—has compelled the [Bureau of Prisons] to suspend all visits—including legal visits, except as allowed on a case-by-case basis— until further notice." *Id.* The Bureau of Prisons ("BOP") has made adjustments since that date to better enable counsel to talk to or meet with their clients, but the inherent risk of the spread of contagious disease within the carceral setting means that serious limitations on visitation remain.

9

As of the date of this Opinion, the BOP webpage describing modified operations states that "[l]egal visits will be suspended for 30 days, at which time the suspension will be re-evaluated," Bureau of Prisons, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp; and the BOP webpage for the MCC contains a notice stating "[a]ll visiting at this facility has been suspended until further notice." BOP, *MCC New York*, https://www.bop.gov/locations/institutions/nym/.

The defense has averred, and the Government has not contradicted, that as a consequence of these restrictions:

> under the Government's proposal, in order for counsel to review sensitive disclosures with their clients, counsel would be required to use highly flawed videoconferencing technology. The undersigned counsel has repeatedly been forced to terminate video conferences with clients detained at the Metropolitan Correctional Center . . . and to request a telephone call instead due to sound quality so poor that neither attorney nor client can hear one another. Moreover, even if the audio did work, counsel would be forced to hold each document up to their computer camera, page by page, trying to prevent their hands from shaking, while their clients peer at blurry computer screens during time-limited video calls that must be requested days in advance.

Dkt. No. 37 at 1.  Thus, "[g]iven the COVID-19 crisis and the current restrictions on attorney visitation within the Bureau of Prisons, the [D]efendants will be unable to view any of the 'sensitive' disclosure material unless the Government or defense counsel is able to provide them with a redacted version."  Dkt. No. 34 at 2.

Under these conditions, the Court finds that Defendant's Proposed Order more adequately protects Defendants' rights in participating in their own defenses without undermining the Government's legitimate interests in protecting the privacy and safety of witnesses and alleged victims.

There is one final matter to address.  In its opposition to the Government's proposed protective order, the defense states an objection "to the Government's implication that [Defendants] will intimidate, harm, or obstruct justice if through their review of the discovery they learn or can discern the identity of witnesses."  Dkt. No. 34 at 3.  In particular, Defendants object to the language in the Government's Proposed Order that states "[c]ertain of the Government's disclosure material, referred to herein as 'sensitive disclosure material' contains information that identifies, or could lead to the identification of witnesses who may be subject to intimidation or obstruction, and whose lives, persons, and property, as well as the lives, persons and property of loved ones, will be subject to risk of harm absent the protective considerations set forth herein."  *Id*.; *see* Government's Proposed Order ¶ 2.  The Court recognizes that, at this stage of the proceedings, Defendants are presumed innocent and that, accordingly, no final determination has been made that Defendants will present a risk of harm to others.  To the extent that the defense's concern is that Defendants should not be saddled with language suggesting that the Court has made a finding, after full presentation of evidence, that they present a risk of harm, the concern is well-founded.  The Court bases its finding with respect to good cause for the protective order on the allegations of the Complaint and Indictment and on the Government's proffer, which the defense has not disputed for purposes of this motion only.  Accordingly, although the Court doubts that the Government language would actually cause confusion, it orders that the language be modified to the following: "Certain of the Government's disclosure material, referred to herein as 'sensitive disclosure material' contains information that identifies, or could lead to the identification of witnesses who **based on the Complaint and Indictment and the Government's proffer, which are not disputed for purposes of this Order only, (1)** may be subject to intimidation or obstruction, and **(2)** whose lives, persons, and property, as well

11

as the lives, persons and property of loved ones, will be subject to risk of harm absent the protective considerations set forth herein." Government's Proposed Order ¶ 2 (language to be added in bold).

For the reasons stated above the Court GRANTS the motion for a protective order but directs the Government to submit a revised form of protective order consistent with this opinion, after meeting and conferring with the defense. The Clerk of Court is respectfully directed to close Dkt. Nos. 36 and 37.

SO ORDERED.

Dated: August 10, 2020  
New York, New York

LEWIS J. LIMAN  
United States District Judge